CHANCERY.    **Gibson vs Moore, &c. and Parmele, &c.**
                          **vs Same.**

APPEALS FROM THE LOUISVILLE CHANCERY COURT.

Case 25.          *Fraudulent sales.   Bona fide purchasers.*

October 1.      JUDGE BRECK delivered the opinion of the Court.

THE appellants, complainants below, exhibited their
The grounds of    several bills in chancery, alledging that Moore obtained
equity stated in
the bill.         from them goods and merchandize to a large amount,
under false pretences, and with the fraudulent intent of
procuring without paying for the same.    That he brought
them from the city of New York, where he had thus
fraudulently procured them, to the city of Louisville,
where attachments had been levied upon them by num-
bers of his creditors, upon the alledged ground that he
was, and for some time had been engaged in running off
his goods and effects, and converting them into money,
with a view to set at defiance and defraud his creditors.
That after the levy of these attachments, Moore had
transferred to one Hamilton Smith, a large quantity of
goods, including a portion of those obtained from the
complainants, in trust for the payment of the attaching
creditors and some others.

The complainants further alledge, that Smith and the
attaching creditors had notice of the fraudulent acts of
Moore, in procuring from them a portion of the goods at-
tached, and embraced in the deed of trust, and which, or
the greater part thereof, still remained in the possession
of Smith.

They insist that having been defrauded and swindled
out of the possession of their goods by Moore, no title
had passed to him, and they pray that they may be restored
to them, and that the contract between them and Moore
may be rescinded.

Smith and the attaching creditors, and others, provided
Answers.          for in the deed, were made defendants and answered.
They admit that attachments were sued out against Moore

as alledged, and the execution of the deed of trust by him to Smith, but deny that they had notice of the complainants claim, and insist and rely that they occupy the attitude of *bona fide* purchasers for a valuable consideration, and without notice. Moore had absconded and was proceeded against as a non-resident.

In regard to the facts of the case, it may be assumed, that Moore obtained the complainants' goods by false representations as to his means. condition and intentions, and it may be presumed, with the fraudulent intent of not paying for them. That a portion of the goods thus procured by Moore, were embraced in the deed of trust, and in the possession of Smith. That after the attachments were levied the deed was executed and in consideration and to secure the payment of just debts due by Moore. It may also be assumed that the deed was obtained by Smith and the *cestui que trusts*, without notice of the complainants claim, or any defect in the title.

The Chancellor was of opinion that the complainants were not entitled to the relief sought, and accordingly dismissed their bills with costs, and they have appealed to this Court.

*Decree of the Chancellor.*

The appellants base their right to relief upon the first section of the act of 1838, (3 *Stat. Laws*, 116,) and also upon the equity of their case upon general principles.

The provision in the act of 1838, relied upon, is as follows:

"That when any person or persons shall purchase any lands, goods, wares, merchandize, or other property, with the fraudulent intent of procuring, without paying for the same, the Courts of chancery in this Commonwealth, shall have power and jurisdiction, upon bill filed for that purpose, to vacate the contract, and cause the property to be restored or compensation to be made therefor; and for that purpose, to attach the property and make all necessary and proper orders for the safety and forthcoming of the same."

We cannot presume that it was the intention of the Legislature, by this provision, to confer upon a Court of Chancery jurisdiction and power to cause property fraudulently procured as described in the act, to be restored to

*The statute of 1838, (3 St. Laws 116,) does not authorize the Chancellor to take property*

GIBSON
*vs*
MOORE, &c.

which may have been fradulently purchased without intending to pay for it, from the hands and possession of an innocent purchaser thereof for valuable consideration, and restore it to the first vendor.

the vendor, wherever and in whosoever hands it might be found. It does not in terms go that far, and we are unwilling, by construction, so to extend it. As between the vendor and the fraudulent vendee, the power to rescind the contract and cause the property to be restored, is undoubtedly given. So also, when the property may have passed from such vendee to a purchaser with notice, or without a valable consideration, or to one who had participated in the fraud in procuring it, the vendor might pursue it, and the Chancellor would be authorized to decree its restoration. But we cannot suppose the Legislature intended to authorize a Court of Chancery to seize the property and cause its restoration, regardless of the rights of those who may have acquired it from the fraudulent vendee. Upon this construction of the act, it can only be considered as declaratory of the jurisdiction and power of a Court of Chancery, as previously claimed and asserted.

In *Bradbury and Foster* vs *Keas*, (5 *J. J. Marshall*, 446,) this Court expressly recognize in a Court of Chancery, all the jurisdiction and power which we think can be rightfully claimed under this act. In that case, the Court say the jurisdiction cannot be doubted. We are, therefore, of opinion that the complainants are entitled to no relief in virtue of the statute, which they would not be entitled to without it.

The question then arises whether the complainants have manifested their right to relief upon the general principles of equity.

The general principles of equity requires that a vendor from whom purchases have been made with the fraudulent design of not paying for them, should show that he has pursued his remedy with reasonable vigilance after the discovery of the fraud.

These goods were purchased by Moore in the city of New York, in August, 1844, for which he gave the complainants his notes payable in six months. Moore seems to have commenced his purchases in that city in April, 1844, and at that period, and prior to the 1st November, 1844, he purchased from various mercantile houses, goods to the amount of about forty thousand dollars, for which it appears he paid comparatively but a small sum. The goods were brought to Louisville, where Moore figured as a merchant. The fraud was committed in New York, where the complainants resided. When they discovered it, does not appear, nor do they alledge. They make no

effort to reclaim their goods till five or six months after they had been purchased by Moore, and with their knowledge brought to Louisville. To entitle a defrauded vendor to vacate his contract and reclaim his goods, he must do it quickly after he discovers the fraud. The claimants in this case do not alledge, nor show that they have been reasonably vigilant in the pursuit of their goods after they obtained knowledge of the fraud.

But waiving this question, let us examine what is deemed the main and important question in the case, and upon which we are disposed to let it exclusively turn. And that is, whether Smith and the beneficiaries under the deed, do not occupy the atitude of *bona fide* purchasers for a valuable consideration, without notice, and as such, whether they are not protected against the complainant's claim.

We have assumed, as we felt fully authorized to do, that the deed was procured without notice of any defect in Moore's title to the goods, or of any claim to them on the part of the complainants.

That Smith and the beneficiaries occupy the attitude of purchasers, and for a valuable consideration, may also be assumed. But it is contended that no new consideration was given, and that an old one is insufficient. The consideration consisted of debts due by Moore to the beneficiaries in the deed, who had at the time it was executed, attachments against Moore, and were in hot pursuit of him, and his effects. Upon the execution of the assignment the pursuit ceased. They found goods in possession of their debtor, which he surrendered in payment of their debts, and which were received while ignorant of any defect in his title.

Whether the attachments were formally dismissed upon obtaining the assignment, or permitted to slumber upon the docket, or whether all the estate and effects of Moore were embraced in it, is not deemed important to inquire, as we are of opinion an old consideration or existing debts, were amply sufficient to support it. This conclusion is sustained, we think, by justice and policy, and by principles settled by this Court in analogous cases. An elaborate review of all the authorities bearing upon the

GIBSON
*vs*
MOORE, &c.

Though goods be purchased with the fraudulent design of not paying for them, yet if before the vendor pursues them and sues for their recovery, they be conveyed in trust for the payment of previously subsisting debts of the purchaser, without knowledge of the fraud in their obtention, the vendor's right to be restored to the possession will be lost.

question, among' which may be found cases some-what in conflict with our opinion, is not deemed necesa-ry, and will not be attempted.

Wherefore, the decree is affirmed.

*Duncan* for appellants; *Pirtle, Speed, Fry and Page* for appellees.